RECORD NO. 12-4894

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JOE OVALLES,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND

**OPENING BRIEF OF APPELLANT**

Edwin F. Brooks
EDWIN F. BROOKS, LLC
Six West Broad Street
Richmond, Virginia 23220
Telephone: (804) 648-1448
brooks@efbrooks.com

*Counsel for Appellant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

STATEMENT OF JURISDICTION.........................................................................1

STATEMENT OF THE ISSUES...............................................................................1

STATEMENT OF THE CASE..................................................................................1

STATEMENT OF THE FACTS ...............................................................................3

SUMMARY OF ARGUMENT .................................................................................6

STANDARD OF REVIEW .......................................................................................6

ARGUMENT .............................................................................................................8

    I.    The District Court Erred when it Sentenced Mr. Ovalles to 57 Months Imprisonment .................................................................................8

CONCLUSION ........................................................................................................13

REQUEST FOR ORAL ARGUMENT ...................................................................13

CERTIFICATE OF COMPLIANCE .......................................................................14

CERTIFICATE OF SERVICE ................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Gall v. United States*,
    552 U.S. 38 (2007) ............................................................................7, 8, 12

*Gall v. United States*,
    ___ U.S. ___, 128 S. Ct. 586, ___ L. Ed. 2d ___ (2007) ....................10, 11, 12

*Kimbrough v. United States*,
    ___ U.S. ___, 128 S. Ct. 558, ___ L. Ed. 2d ___ (2007) .........................10, 11

*Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d 203
    (2007) ........................................................................................................8

*United States v. Allen*,
    491 F.3d 178 (4th Cir. 2007) ....................................................................8

*United States v. Booker*,
    543 U.S. 220, 125 S. Ct. 738 (2005) .......................................................6

*United States v. Carter*,
    564 F.3d 325 (4th Cir. 2009) ....................................................................7

*United States v. Daughtery*,
    874 F.2d 213 (4th Cir. 1989) ....................................................................6

*United States v. Layton*,
    564 F.3d 330 (4th Cir. 2009) ....................................................................8

*United States v. Lynn*,
    592 F.3d 572 (4th Cir. 2010) ....................................................................7

*United States v. Mendoza-Mendoza*,
    597 F.3d 212 (4th Cir. 2010) ....................................................................7

*United States v. Newsome*,
    322 F.3d 328 (4th Cir. 2003) ....................................................................9

*United States v. Pauley*,
    511 F.3d 468 (4th Cir. 2007) ....................................................................... 6, 11

*United States v. Whorley*,
    550 F.3d 326 (4th Cir. 2008), cert. denied, 130 S. Ct. 1052 (2010) ............... 12

## STATUTES

18 U.S.C. § 1956(a)(1(A)(i) ................................................................................. 2
18 U.S.C. § 2341(2) ............................................................................................. 2
18 U.S.C. § 2342 (a) ........................................................................................ 2, 5
18 U.S.C. § 3231 ................................................................................................. 1
18 U.S.C. § 3553(a) .............................................................................. 7, 8, 11, 12
18 U.S.C. § 371 ................................................................................................... 5
18 U.S.C. § 3742 ................................................................................................. 1
28 U.S.C. § 1291 ................................................................................................. 1

## UNITED STATES SENTENCING GUIDELINES

U.S.S.G. § 6A1.3 ............................................................................................... 10

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231.  The Judgment of Conviction and Sentence having been filed on March 9, 2012, and a *pro se* Notice of Appeal was filed by Mr. Ovalles on November 5, 2012, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

Did the District Court impose an unreasonably long sentence in this case?

## STATEMENT OF THE CASE

Mr. Ovalles was arrested on April 18, 2012 on a Criminal Complaint that was filed with the United States District Court for the Eastern District of Virginia—Richmond Divison that same day.  On April 23, 2012, a Detention Hearing was held, and Mr. Ovalles was ordered held without bond. On May 2, 2012, a grand jury sitting in the Eastern District of Virginia, Richmond Division returned an Indictment (the "Indictment") against four defendants, including Mr. Ovalles.  Mr. Ovalles was named in three of the eleven counts in the Indictment. Count 5 alleged that Mr. Ovalles conspired with his three codefendants Mohamed Labidi (Labidi), Wissem Ayachi (Ayachi), and Onesimo Marcelino (Marcelino) to possess, distribute, transport and sell contraband cigarettes as that term is defined

1

in 18 U.S.C. §2341(2) with said acts being in violation of 18 U.S.C.§2342 (a). Count 8 alleged that Mr. Ovalles did receive, possess, and distribute cigarettes on November 30, 2010. Count 11 alleged that all four defendants were involved in a money laundering conspiracy in violation of 18 U.S.C. §1956(a)(l)(A)(i). J.A. at 15-28. On May 14, 2012, Mr. Ovalles appeared before the Honorable Henry E. Hudson, pleaded not guilty to Counts 5, 8 and 11 of the Indictment and demanded trial by jury. A jury trial was scheduled to commence on July 9, 2012.

On June 21, 2012, Mr. Ovalles pleaded guilty to Counts 5, 8 and 11 of the Indictment without either a written Plea Agreement or a Statement of Facts. J.A. at 31-57. During the guilty plea hearing, the Magistrate Judge conducting that hearing reviewed the Government's oral summary of facts with Mr. Ovalles J.A. at 46-54. At the conclusion of the Government's oral summarization of the evidence against Mr. Ovalles, Mr. Ovalles' trial counsel stipulated that those facts were correct. J.A. at 54.

After both parties received and reviewed the Presentence Report ("PSR") the defense filed an Objection with the Court on September 26, 2012. J.A. at 70A-70B. On September 27, 2012, the Government filed its Statement of Position Regarding Sentencing Facts and Factors. J.A. at 71-80. On September 30, 2012, the Government filed a Supplemental Position Concerning Sentencing Facts and Factors. J.A. at 95-103. On October 10, 2012, Mr. Ovalles filed his Statement of

2

Position on Sentencing Facts and Factors that also included a Motion for Downward Variance. J.A. at 104-110.

At sentencing, the Court denied Mr. Ovalles' Motion for Downward Variance and overruled the defense objections to the Presentence Report. At the conclusion of the sentencing hearing, the Court sentenced Mr. Ovalles to 57 months imprisonment. J.A. at 144-149. The District Court entered its Judgment on, 2012, and Mr. Ovalles filed his *pro se* Notice of Appeal on November 5, 2012. J.A. at 150-151.

## STATEMENT OF FACTS

Mr. Ovalles came to Virginia on or about May 26, 2010, and met with Alcohol, Tobacco and Firearms Agents ("ATF") agents who were acting in an undercover capacity as the proprietors of a warehouse that sold cigarettes without tax stamps. Mr. Ovalles made the initial contact with the agents, and advised that he was there for his cousin who was his boss. Mr. Ovalles and the undercover agents discussed the fact that cigarettes were untaxed and therefore contraband, the dangers of transporting large amounts of untaxed cigarettes, prices per master case[1] of cigarettes. Mr. Ovalles also indicated that his uncle was looking to make one to two large scale purchases of cigarettes every week, if possible. The meeting was

---

[1] A master case of cigarettes is 12,000 cigarettes, or 60 10 pack cartons of cigarettes.

3

the initiation of the members of the conspiracy coming to the warehouse and purchasing hundreds of master cases of untaxed cigarettes from June 2010 until April 18, 2012. The undercover agents made it clear in the initial meeting with Mr. Ovalles that the cigarettes were being sold without any tax stamps, and the non-payment of Virginia or New York taxes (the cigarettes were transported to New York to be sold) is what made the cigarettes contraband. . J.A. at 47-48, 186. On July 29, 2010, Mr. Ovalles came to the undercover warehouse driving a pickup truck accompanied by another man driving a truck and they purchased 40.5 master cases of cigarettes and paid $72,000.00 cash for those cigarettes. J.A. at 189.

Mr. Ovalles was charged in Count 8 with the overt act of purchasing cigarettes in furtherance of the conspiracy on November 30, 2010, but Mr. Ovalles was stopped by a Virginia State Trooper after making the purchase of contraband cigarettes. After he was stopped, the pickup truck Mr. Ovalles was driving was subjected to a consensual search, and the cigarettes that he had just purchased from the undercover ATF agents were seized by the Virginia State Police agents who were in communication with the ATF agents. Mr. Ovalles disclaimed any knowledge of the large amount of untaxed cigarettes, and said he borrowed the truck from his uncle. Mr. Ovalles was interviewed, but was not arrested, and allowed to leave after the cigarettes had been seized. Soon thereafter, Mr. Ovalles contacted the undercover agents, advised them of the interdiction, and stated that

4

they would have to find a different way to transport the contraband cigarettes. J.A. at 192-193.

On April 18, 2012, Mr. Ovalles was arrested along with Onesimo Marcelino and charged in a criminal complaint with conspiring with unnamed others to receive and possess contraband cigarettes in violation of 18 U.S.C. § 371 and 18 U.S.C. §2342. Mr. Ovalles participated in the conspiracy, largely as a driver and messenger for the leader of the conspiracy, Onesimo Marcelino. A good portion of the cigarettes attributed to Mr. Ovalles came from the purchase of 125 master cases the same day he was arrested. Not coincidentally, he was with Mr. Marcelino for this large scale transaction. However, the actual transaction was conducted by Ayachi, who is the one who gave the undercover agents $200,000.00 for the cigarettes to be purchased that day. J.A. at 3, 24, 51-52, 200-201.

There were many more sales that were made by the undercover ATF agents to Ayachi and Labidi than to Mr. Ovalles, but they were viewed by the District Court as being akin to "mules" while Mr. Ovalles was viewed as having a more important role in the overall conspiracy due to his coming to meet with the agents before the commencement of any purchases from the undercover warehouse, and due to his relationship with Mr. Marcelino. J.A. at 131-132, 134-135. Both facts, which are undeniable, are easily explained, as set forth below, and the District Court's reliance on these factors was misplaced.

## SUMMARY OF ARGUMENT

The record on appeal does not support the sentence Mr. Ovalles received as it overstated his role in the conspiracy. Mr. Ovalles admittedly participated in the transportation and distribution of untaxed cigarettes purchased from ATF agents acting in an undercover capacity. However, he was not a leader of the organization. Further, he did not distribute illegal street drugs to the undercover agents, nor was he involved in the transportation and sale of firearms. Yet he received a sentence equivalent to his co-conspirators Ayachi and Labidi, who did participate in such activities, though their cigarette activity was basically viewed as "mules". As such, the sentence imposed in this case was unreasonable, and must be vacated and remanded to the District Court for a new sentencing hearing where Mr. Ovalles shall be sentenced to a shorter sentence than his more culpable co-conspirators.

## STANDARD OF REVIEW

A trial court's factual determinations at sentencing are reviewed for clear error; purely legal interpretations of the Sentencing Guidelines are reviewed *de novo*. *United States v. Daughtery*, 874 F.2d 213, 217 (4th Cir. 1989). Sentencing decisions are reviewed by an appellate Court for reasonableness. *United States v. Pauley,* 511 F.3d 468, 473 (4th Cir. 2007); *citing United States v. Booker*, 543 U.S.

220, 260-62, 125 S.Ct. 738 (2005). Appellate review of a district court's imposition of a sentence, "whether inside, just outside, or significantly outside the Guidelines range," is for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007). This review requires consideration of both the procedural and substantive reasonableness of a sentence. *Id*. at 51. "Procedural reasonableness evaluates the method used to determine a defendant's sentence." *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010). This court must assess whether the district court properly calculated the advisory Guidelines range, considered the 18 U.S.C. § 3553(a) factors, analyzed any arguments presented by the parties, and sufficiently explained the selected sentence. *Gall*, 552 U.S. at 49-50; *see also United States v. Lynn*, 592 F.3d 572, 576 (4th Cir. 2010) ("[A]n individualized explanation must accompany every sentence."); *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009). "Substantive reasonableness examines the totality of the circumstances to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *Mendoza-Mendoza*, 597 F.3d at 216.

# **ARGUMENT**

I.   THE DISTRICT COURT ERRED WHEN IT SENTENCED MR. OVALLES TO 57 MONTHS IMPRISONMENT.

The Federal appellate Courts review a sentence for reasonableness, applying an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007); see also *United States v. Layton*, 564 F.3d 330, 335 (4th Cir. 2009). In so doing, we first examine the sentence for "significant procedural error," including "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the 18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. We presume on appeal that a sentence within a properly calculated advisory Guidelines range is reasonable. *United States v. Allen*, 491 F.3d 178, 193 (4th Cir. 2007); see *Rita v. United States*, 551 U.S. 338, 346-56, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007) (upholding presumption of reasonableness for within-Guidelines sentence).

The sentence in this case is erroneous because the factors relied upon by the District Court in sentencing Mr. Ovalles to a term of incarceration commensurate with codefendants Labidi and Ayachi really do not justify a 57 month sentence. While a large amount of contraband cigarettes were involved with this case, Mr. Ovalles' role really was that of a driver. The only reason he came to Virginia from

8

New York on behalf of Marcelino is because Mr. Ovalles is able to speak fluent English, while Mr. Marcelino could not. He was sent on behalf of his relative for that reason alone. Mr. Ovalles was paid by Marcelino for each of the trips he made to Virginia with the exception of the last one, and the only reason he wasn't paid for the last trip was that everyone was arrested before Mr. Ovalles could be paid. Unlike Ayachi and Labidi, Mr. Ovalles did not distribute drugs (cocaine and marijuana) to the undercover agents, nor did he transfer any drugs across state lines for the purposes of distributing them to the undercover agents. Unlike Ayachi, he had no involvement with the purchase and transportation of firearms. That point was clarified during the August 13, 2013 hearing on restitution.[2] So, Mr. Ovalles was viewed to have a bigger role in the conspiracy than the available evidence showed he had based on his having the first meeting with the undercover ATF agents, and his being related to Marcelino. Mr. Ovalles did participate in three purchases of cigarettes from the undercover warehouse, though the appellant concedes that there was evidence developed in the course of the investigation that Mr. Ovalles had assisted Marcelino in the trafficking of cigarettes before the May 26, 2010 meeting with the undercover agents. Some of this evidence was from the

---

[2]Mr. Ovalles did not contest the amount of restitution due in this case because of this Court's opinion in *United States v. Newsome*, 322 F.3d 328 (4th Cir. 2003); wherein the defendant went to trial, was convicted of a misdemeanor offense, and was found to owe the same amount of restitution as co-defendants convicted of felony offenses. *Newsome*, 322 F.3d at 35-37.

debriefing of Labidi, which means that it is an uncorroborated out of court statement by a cooperator. Such statements are to be treated carefully pursuant to United States Sentencing Guideline §6A1.3 as the commentary to that section cautions against reliance upon unreliable allegations. Although Marcelino had a prior history of convictions for selling contraband cigarettes, Mr. Ovalles did not. He also did not make nearly as many deliveries as Ayachi and Labidi. It almost seems that Mr. Ovalles may have received a shorter sentence had he not met with the undercover ATF agents on May 26, 2010, and instead participated in more contraband cigarette transactions.  The activities of Mr. Ovalles' co-defendants may be found at pages 194-200 of the Joint Appendix. Again, Mr. Ovalles was involved in the conspiracy, but he was not involved with illegal drugs or the transportation of firearms. Those two factors strongly militate in favor of a longer sentence for Ayachi and Labidi than the one Mr. Ovalles received. Yet their sentences are only three months longer than Mr. Ovalles' and his sentence should be shorter because he was only involved with transportation of untaxed cigarettes, and not the distribution of drugs and the transportation of firearms.

  The United States Supreme Court has in a series of cases set forth the process of determining a sentence variance by United States District Courts: *Gall v. United States,* ___ U.S. ___, 128 S.Ct. 586, ___ L.Ed.2d ___ (2007); and *Kimbrough v. United States,* ___ U.S. ___, 128 S.Ct. 558, ___ L.Ed.2d ___ (2007).

In *Gall,* the Court instructed that the sentencing court should first calculate the applicable Guidelines range. 128 S.Ct. at 596-97. This starting point furthers Congress' desire for efficient administration and nationwide consistency in sentencing. *Id.* After calculating the Guidelines range, the sentencing court must give both the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate." *Gall,* 128 S.Ct. at 596-97. The sentencing court should then consider all of the 18 U.S.C. § 3553(a) factors to determine whether they support the sentence sought by either the defense or the Government. *Id. See also Kimbrough,* 128 S.Ct. at 569 (noting that, while § 3553(a) requires the sentencing court to give due consideration to the Guidelines, *Booker* allows the sentencing court to fashion the sentence in light of other statutory considerations). In so doing, the sentencing court may not presume that the Guidelines range is reasonable. *Gall,* 128 S.Ct. at 596. In the event the sentencing court decides to impose a variance sentence, *i.e.,* one outside of the recommended Guidelines range, the sentencing court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* As noted by the *Gall* Court, it is an "uncontroversial" proposition that a "major departure should be supported by a more significant justification than a minor one." *Id. See also, United States v. Pauley*, 511 F.3d 468, 511 (4th Cir 2007). When reviewing for substantive reasonableness, we "take into account the

11

totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. We "may consider the extent of the deviation [from the recommended Guidelines range], but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*; *see United States v. Whorley*, 550 F.3d 326, 342-43 (4th Cir. 2008), cert. denied, 130 S. Ct. 1052 (2010).

In *Gall*, 128 S.Ct. at 594-595 (2007); the Supreme Court also stated that "[w]e reject, however, an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range. We also reject the use if a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." In this case, the Downward Variance was denied, and that decision cannot be appealed except in those circumstances wherein the District Court found that it did not have the authority to depart. In this case, the District Court considered the departure and denied it on its merits. Nonetheless, as set forth above, the sentence imposed in this case, though within the prescribed sentencing guideline range, is longer than necessary.

## CONCLUSION

For the reasons stated above, this Court should vacate the sentence imposed by the United States District Court In Mr. Ovalles' case and remand the case to the United States District Court for re-sentencing.

Respectfully submitted;
JOE OVALLES


By _____/s/_____
          Of Counsel


## REQUEST FOR ORAL ARGUMENT

Counsel for appellant asserts that the issues raised in this brief may be more fully developed through oral argument, and respectfully requests the same.

13

# **CERTIFICATE OF COMPLIANCE**

1. This brief of the appellant has been prepared using Microsoft Word software, Times New Roman font, 14 point proportional type size.

2. EXCLUSIVE of the corporate disclosure statement; table of contents; table of authorities; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, this brief contains 2895 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so requests, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

_____
Edwin F. Brooks, Esq.
Counsel for Appellant, Joe Ovalles

## **CERTIFICATE OF SERVICE**

      I, Edwin F. Brooks, do herby certify this 11th day of October, 2013, that the required copies of the foregoing Opening Brief of Appellant in the Office of the Clerk of the U.S. Court of Appeals for the Fourth Circuit via hand delivery and electronically using the Court's CM/ECF system which will send notification of such filing to:

Stephen W. Miller, Esquire
Assistant U.S. Attorney
Office of the U.S. Attorney
600 E. Main St., Suite 1800
Richmond, Virginia  23219

                                              /s/
                                    Edwin F. Brooks